UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

UNITED STATES OF AMERICA,

vs.

CRAIG SHERMAN,

     Defendant.

-----------------------------------------------/

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**COMES NOW** the Defendant, CRAIG SHERMAN (MR. SHERMAN), by and through his undersigned counsel, and hereby files this Memorandum in Aid of Sentencing pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and in support states as follows:

## PRELIMINARY STATEMENT:

Mr. Sherman is eighty-one (81) years of age and is scheduled to appear before the Court on November 14, 2023, for Sentencing after having entered his guilty pleas on August 7, 2023, to two (2) counts of Wire Fraud in violation of 18 U.S.C. Section 1343.

Mr. Sherman has no prior criminal history. He accepts responsibility for his wrongdoing and is sincerely remorseful for his crimes. He deeply regrets betraying the victims in this case. He is both ashamed and disappointed in making terrible decisions and departing from his otherwise lifetime of ethical and law-abiding conduct. Letters are attached to this Memorandum from individuals who have known Mr. Sherman for years

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

and all state that his crimes are completely uncharacteristic of him and his otherwise entire productive, law-abiding life.

As will be presented in this Sentencing Memorandum, Mr. Sherman is elderly and has significant serious medical issues that justify both a downward departure/variance sentence from the Advisory Federal Sentencing Guidelines. In addition, Mr. Sherman's history of law-abiding conduct, Military Service, sincere/genuine remorse, and no risk of committing new crimes additionally all justify a downward departure/variance sentence.

Mr. Sherman is requesting that he be sentenced to a term of probation with home confinement[1]. This form of punishment in light of Mr. Sherman's age (81) and his medical issues requiring continuous care is "equally efficient as and less costly than incarceration." See, U.S.S.G. 5H1.1, 5H1.4 discussed below. Additionally, said sentence will allow Mr. Sherman's medical conditions continue to be addressed in the "most effective manner" by his own doctors. See, 18 U.S. Section 3553(a)(2)(5)

**FEDERAL SENTENCING**

The Federal Sentencing Guidelines are no longer mandatory. U.S. v. Booker, 543 U.S. 220 (2005), Gall v. U.S., 552 U.S. 38 (2007); Freeman v. U.S., 564 U.S. 522 (2011).

After U.S. v. Booker , supra, a federal sentencing involves three (3) steps:

1.    First, the Court must calculate correctly the Advisory Federal Sentencing

---

[1] A Report and Sentencing recommendations prepared by The Aleph Institute on behalf of Mr. Sherman attached hereto. A representative from The Aleph Institute will appear and testify at the Sentencing hearing. (Ex. "A")

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Guidelines;

2.      Second, the Sentencing Court must determine whether the particular facts of the case justify a "departure" either upward or downward under the Sentencing Guidelines;

3.      Third, the Sentencing Court must independently evaluate each of the seven (7) factors set forth in 18 U.S.C. Section 3553 (a) and determine what sentence is sufficient but not greater than necessary. Gall v. U.S., supra at 50-51; Rita v. US., 551 U.S. 338, 352-354; U.S. v. Henry, 1 F. 4th 1315 (11th Cir 2021).

## 1. THE ADVISORY SENTENCING FEDERAL GUIDELINES:

The PSI reports that Mr. Sherman has no prior criminal arrests/convictions, and thus has a Criminal History Category I, and a Total Adjusted Offense Level of 26. The Advisory Sentencing Guideline Imprisonment Range is: 63 to 78 months.  Mr. Sherman's agrees this Advisory Sentencing Range has been correctly calculated.

## 2. DOWNWARD DEPARTURE FACTORS:

U.S.S.G.  5H1.1, age, and Section 5H1.4, physical conditions both provide reasons for a guideline departure[2].

As noted above, Mr. Sherman is eighty-one (81) years old.  In addition to his age, Mr. Sherman has significant health problems/issues. As noted in the PSI (PSIR pages 15-17), Mr. Sherman's medical records were provided to probation and said records confirm several serious significant health issues:

---

[2]The PSI Report notes 5H1.1, 5H1.4, may warrant departure/variance sentence(PSI pages 25-26)

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

1. **Obstructive Sleep Apnea:** According to medical records from Dr. Natalio Chediak with Boca Raton Sleep Disorders Center in Palm Beach County, Florida dated June 19, 2023, Mr. Sherman has been a patient since 2008 with a diagnosis of severe obstructive sleep apnea treated with a continuous positive airway pressure (CPAP) machine. Due to Mr. Sherman's severity of sleep apnea, Dr. Chediak noted Mr. Sherman must use, clean, and sanitize the device nightly. Additionally, a report from Dr. Robert Kotler, Beverly Hills, California dated June 1, 2023, who has been a long-time consultant and treating specialist for Mr. Sherman. Dr. Kotler noted that Mr. Sherman has an upper airway obstruction causing sleep apnea necessitating use of a CPAP machine. He further noted that Mr. Sherman has nasal allergies calling for both prescription medication by mouth and various prescription nasal "sprays." Records confirm that Mr. Sherman has an overproduction of mucus, which requires medication, and positional rhinitis, a/k/a vascular rhinitis, which requires rest with the head not erect[3].

2. **Glaucoma:** According to medical records from Dr. Daniel Jewelewicz with Delray Eye Associate PA in Delray Beach, Florida dated May 24, 2023, Mr. Sherman is being treated for primary open-angle glaucoma. Mr. Sherman has glaucoma bilaterally with it being quite advanced in his left eye. Records confirm Mr. Sherman takes three (3) medications for his glaucoma including Simbrinza-two to three times daily, Lumigan-once a day, and Timol-two times daily. Dr. Jewelwicz noted that Mr. Sherman must continue to

---

[3] Dr. Kotler with agreement of the Government will be providing an Affidavit elaborating on Mr. Sherman's Obstruction Sleep Apnea and the dangers to Mr. Sherman's health if incarcerated.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

use the multiple eye drops regularly and have access to bi-monthly eye check ups for monitoring of his conditions to avoid risk of him going blind. The checkups include use of sophisticated ophthalmology equipment including retina examination, peripheral vision, measurements, and high-pressure measurements.

3. **Chronic Kidney Disease Stage 3:** As a result of Mr. Sherman's heart surgery, his kidneys were compromised. According to medical records from Dr. Jared Jaffe with Boca Nephrology, PA in Boca Raton, Florida dated May 25, 2023, Mr. Sherman was initially seen in his office on August 12, 2021, and was diagnosed with chronic kidney disease Stage 3, hypertension, hyperlipidemia, and iron deficiency anemia. Mr. Sherman is seen on a regular basis with labs and urine testing being conducted to monitor his kidney function. Records confirm Mr. Sherman receives prescribed medication to control his hypertension, and oral iron to treat his iron deficiency anemia.

4. **Heart Issues:** According to medical records from Dr. Seba Krumholtz with Boca Raton Physicians, Boca Raton, Florida dated May 25, 2023, Mr. Sherman has been under his care for several years for a severe cardiac condition that requires constant vigilance and monitoring. Mr. Sherman requires frequent cardiac imaging and examinations with a cardiologist. Records confirm Mr. Sherman had open heart surgery in May 2021 with a hospital stay for almost one month. Medical records from Premier Cardiology of Boca Raton, LLP dated July 20, 2023, further confirm Mr. Sherman had an aortic valve replacement with complications requiring thirty (30) days in intensive care. Dr. Krumholtz noted that Mr. Sherman recently saw a neurologist for a worsening tremors and has

5

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

developed Parkinson's like symptoms. Records further confirm Mr. Sherman has a worsening gait with frequent falls and has been injured from the falls at least four times in the last several months. Records confirm Mr. Sherman has been prescribed the following medications: Escitalopram Oxalate for anxiety/depression, Labetalol for hypertension, Isotretinoin for acne, Haloperidol (haldol) for facial tics, Bumetanide for congestive heart failure, Ecotrin low strength (aspirin), Senokot, and Docusate Sodium to prevent constipation, Magnesium Oxide for his heart, Tylenol Extra Strength as needed for fever or pain, and Atorvastatin for high cholesterol.

5. **Skin Cancer:** According to medical records from Boca Raton Skin and Laser Center in Boca Raton, Florida dated May 23, 2023, and June 7, 2023, Mr. Sherman is under the care of that facility for several dermatological conditions including carbuncles (cysts), acne, and various skin lesions. Mr. Sherman is treated every couple of weeks for painful carbuncles on his face and neck area which require injections. He has also been treated for acne on his face, back, and scalp and is seen every six (6) to eight (8) weeks for acne medication. Records confirm there is also a lesion on Mr. Sherman's forehead that has been biopsied and requires close monitoring for any changes or re-occurrence. Records further confirm that Mr. Sherman was treated for Squamous Cell Carcinoma (skin cancer) on his left leg, which require close monitoring.

6. **Hearing Issues:** According to medical records from Dr. Ali Danesh with Labyrinth Audiology in Boca Raton, Florida dated June 10, 2020, Mr. Sherman has been a patient since approximately 2018 and has a history of significant sensorineural hearing

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

loss in both ears, which has significantly impacted his quality of life. His reduction in hearing sensitivity requires the constant use of special hearing aids to improve his communication abilities. Records confirm Mr. Sherman was fit with "Lyric" hearing aids in both ears. These devices sit deep within the ear canal and are required to be removed and replaced every one (1) to two (2) months by a qualified audiologist.

7. **Mental Health:** According to medical records from Dr. Eric S. Rutstein in Boca Raton, Florida dated October 29, 2020, Mr. Sherman has been a patient since January 10, 2020. Records confirmed he was diagnosed with generalized anxiety disorder, obsessive-compulsive disorder, and major depression. Mr. Sherman was compliant with treatment and improved with psychopharmacological intervention along with psychotherapy.

According to a forensic psychological assessment report from Dr. Adam J. White in West Palm Beach, Florida dated June 1, 2023, Mr. Sherman was diagnosed with major depressive disorder, recurrent, without psychotic features, and other mental health conditions including generalized anxiety disorder and obsessive-compulsive disorder. Outpatient mental health treatment and a further evaluation was recommended. Dr. White recommends mental health treatment[4].

The circumstances of both Mr. Sherman's age and poor health justify a downward departure from the Advisory Guidelines on the basis of U.S.S.G. Section 5H1.1; 5H1.4.

---

[4]Dr. White will testify at Mr. Sherman's Sentencing.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

The PSI acknowledges that Mr. Sherman's age and his "significant medical conditions" may warrant departure/variance. (PSIR pages 25 -26)

Section 5H1.1 of the Sentencing Guideline Manual reads:

Age, including youth, is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed in section 5H1.4 (physical condition, including drug or alcohol dependence or abuse; gambling addiction).

Likewise, the pertinent portion of Section 5H1.4 reads:

Physical condition or appearance including physique is not ordinarily relevant in determining whether a departure may be warranted.  However, an extraordinary physical impairment may be a reason to depart downward, e.g., in the case of a seriously infirm defendant, home detention may be efficient and less costly than imprisonment.

To the extent that Section 5H1.4 requires that the individual be "seriously infirm," which is presumably a higher standard than that found in Section 5H1.1, which requires only the defendant be "infirm," Mr. Sherman relies on Section 5H1.1.

Thus, while age alone or physical impairment alone may not be sufficient for a downward departure sentence, the combination of both have been found to justify a downward departure.

In U.S. v. Collins, 122 F.3d 1297,1307 (10th Cir 1997), the defendant was sixty-four (64) years old and suffered from heart disease, high blood pressures, ulcers, arthritis, and prostatitis.  In light of defendant's old age and ill health the court departed downward per U.S.S.G. Section 5H1.1 and 5H1.4 sentenced him to forty (40) months

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

of incarceration for distribution of cocaine rather than the 151 to 188 months as recommended by the Sentencing Guidelines.

In <u>U.S. v. Hildebrand</u>, 152 F.3d 756 (8th Cir 1998), (overruled in part, by <u>Whitfield v. U.S</u>, 543 US 209 (2005)), the court sentenced the seventy (70) year old defendant to five (5) years of probation with six (6) months in a community correctional facility followed by eighteen (18) months home confinement for Mail Fraud and Money Laundering in lieu of the 51 to 63 months recommended by the Sentencing Guidelines. The court did so even though "the Bureau of Prisons could manage <u>Zucker's</u> (the defendant) conditions[5]."

In the <u>U.S. v. Willis</u>, 322 F. Supp. 2d 76, 78 (D Mass. June 23, 2004), the court sentenced the sixty-nine (69) year old defendant to probation with six (6) months of home detention for income tax offenses. The court imposed that sentence rather than the 21 to 27 months recommended by the Sentencing Guidelines noting:

> <u>Willis</u> has an inordinate number of potential serious medical conditions. It seems imminently logical that <u>Willis</u> is at an age where these medical conditions will invariably get worse. It seems logical that being away from his support structure, both family and doctors, will invariably exacerbate his conditions. It seems logical that if were he to go to jail for three (3) years between 69 to 71 that he would emerge in substantially worse shape than he is now, if he does not die before completing his sentence. It seems logical that while the BOP can care for him, the cost of that care are bound to escalate. Finally, it seems logical that his conditions at least to put him in the zone that enables him to balance the cost of home detention versus jail, whether home confinement will be "equally efficient as and less costly than incarceration," U.S.S.G. Section 5H1.1, or whether "home detention may be efficient as, and less costly than prison" as it is described in U.S.S.G. Section 5H1.4. <u>Willis</u>, <u>supra</u> at 84-85.

---

[5]Mr. Sherman acknowledges that the 11th Circuit allows for consideration of whether the Bureau of Prisons can adequately care for the defendant. <u>See</u>, <u>U.S. v. Devegter</u>, 493 F.3d 1299(11th Circuit. 2006)

9

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

In <u>U.S. v. Willis</u>, the Court also noted:

Extraordinary cannot mean only those conditions which the BOP cannot handle. It cannot be that if the BOP can accommodate a given medical condition it is by determining not extraordinary. If that were so there would be no need for the second sentence of Section 5H1.1 balancing the costs of home detention and incarceration.

In <u>U.S. v. Baron</u>, 914 F. Supp 660, 662-665, (D MASS. 1995) the court granted a downward departure sentence from range of 27-33 months in prison to probation and home detention for a 76-year-old defendant with medical problems that could be made worse by incarceration.

In <u>U.S. v. McFarlin</u>, 535 F.3d 808 (8th Cir 2008) a downward departure was upheld for a 56 year-old defendant who had several recent surgeries and had medical conditions similar to these of Mr. Sherman of severe coronary artery disease, asthma, sleep apnea, high blood pressure, gout, and other conditions.

In <u>U.S. v. Rioux</u>, 97 F.3d 648 (2nd Cir 1996) a downward departure sentence was affirmed for defendant who had a kidney transplant twenty (20) years prior and his new kidney was diseased. The court noted that while his kidney function remained stable, the defendant needed to have regular medical check ups, blood work done, and receive prescription medications that all justified downward departure sentence.

The consideration of costs is of course one of the commands of U.S.S.G. Section 5H1.1: "age maybe a reason to depart downward in a case in which the defendant is elderly and infirm and in where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." According to the PSI Report, Mr.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Sherman's imprisonment in the Bureau of Prisons will cost $3,688.00 a month, where as supervision on probation-by-probation office is $371.00 a month[6].

Just as was true with the defendant in _Willis_, Mr. Sherman is at an age where his health will "invariably get worse." As was true in _Willis_, it seems likely that Mr. Sherman, if given a lengthy prison sentence, would "emerge in substantially worse shape than he is now if he does not die before completing his sentence." Given all that, as was done in _Willis_, it is reasonable and just to balance the costs of sentencing Mr. Sherman to probation with home detention versus prison and grant a downward departure sentence to Mr. Sherman.

Apart from Mr. Sherman's health conditions is that a sentence of imprisonment imposed on an elderly first-time offender is significantly harsher than the same sentence imposed on a younger person. Mr. Sherman's advanced age leaves him extremely vulnerable to victimization, abuse, and severe adjustment problems in a prison environment. Research confirms that there is a remarkable distinction between inmates who age within a prison system and those who are new elderly offenders. "[N]ew elderly offenders' initial reaction to incarceration later in life was often characterized by family conflict, depression, thoughts of suicide, and a fear of dying in prison." Ronald H. Aday, _Aging in Prison: A Case Study of New Elderly Offenders_, International Journal of Offender Therapy and Comparative Criminology, Spring 1994, Vol. 38, No. 1. Similarly, the Department of Justice has found that "[m]anagement problems with elderly inmates...

---

[6]As referenced in Dr. Charles Howard's Report an inmate requiring medical services while incarcerated cost the Government $104,000.00 annually. Mr. Sherman medical needs could exceed this amount significantly due to all necessary out of prison medical care. (Ex. "M")

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, [and] need for special physical accommodations in a relatively inflexible physical environment." Correctional Health Care, *Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. Dept. of Justice, National Institute of Corrections at 9-10(2004). This report notes that the first-time offenders are "easy prey for more experienced predatory inmates" and that this is particularly true for the elderly. *Id.* at 10. "Elderly" is defined throughout the report as age 50 or older; clearly, the vulnerabilities of an 81-year-old man like Mr. Sherman would be significantly higher[7].

Imprisonment also is likely to severely diminish Mr. Sherman's remaining life expectancy. "Research points to a trend of 'accelerated aging' in prison, i.e., that a prisoner's physiological age is, on average, seven to 10 years older than his or her chronological age." Mike Mitka, *Aging Prisoners Stressing the Health Care System*, Journal of the American Medical Association, Vol 292, No. 4, July 2004. In Mr. Sherman's case, the effect of age acceleration would make him physiologically the age of 91 years old.

The older prisoner often struggles tremendously with the stress imposed by the prison environment. Prisons were, and still are, designed primarily for a younger population. Ronald H. Aday, *Golden Years Behind Bars: Special Programs and Facilities for*

---

[7]Defense counsel acknowledges and credits miscellaneous Sentencing Memorandums done in other cases for these cites and authorities.

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

*Elderly Inmates,* Fed. Probation, 47, 48 (June 194) ("Prison systems are primarily designed to house young, active inmates."); Lyle B. Brown, *The Joint Effort to Supervise and Treat Elderly Offenders: A New Solution to A Current Corrections Problem,* 59 Ohio St. L.J. 259, 272-75 (1998).

As noted above Mr. Sherman has significant emotional/mental health issues documented by Dr. White.

In light of Mr. Sherman's advanced age and his significant medical conditions imprisonment respectfully would be an unduly harsh punishment, and a downward departure sentence to probation and home confinement is warranted.

## 3. 18 U.S.C. § 3553(a)

As noted above, a sentencing court must independently evaluate each of the seven (7) factors set forth in 18 U.S.C. § 3553(a) and determine what sentence is "sufficient but not greater than necessary." Gall v. U.S., supra at 50-51; Rita v. U.S., 351 U.C. 338, 352.354; U.S. v. Hunt, 459 F.3d 1180, 1182 (11th Cir 2006); U.S. v. Talley, 431 F.3d 784, 786 (11th Cir 2008). The factors that must be considered:

(1) the Nature and Circumstances of the offense and the History and Characteristics of the defendant;

(2) the Need For the Sentence Imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

13

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the Kinds of Sentences Available;

(4) the Kinds of Sentence and the Sentencing Range Established...;

 (5) any Pertinent [Sentencing Commission] policy statement...;

(6) the Need to Avoid Unwarranted Sentence Disparities Among Defendants with similar records who have been found guilty of similar conduct; and

(7) the Need to Provide Restitution to any victims of the offense.

## A. Nature and Circumstances of the Offense

A defendant's criminal conduct must be considered in the context of his entire life. As stated in U.S. v. Adelson, 441 F.Supp. 2d 506, 513-514(S. D. N.Y. 2006), "[but surely if a man is to receive credit for the good he has done, his immediate misconduct must be assessed in the context of his overall life.]"

Mr. Sherman understands and appreciates his crimes are serious. He takes full responsibility for taking monies from the victims to fund personal expenses of supporting his family and maintaining the operation of his law firm. He not only accepts responsibility but is sincerely remorseful. Character letters are attached to this Memorandum from individuals who have known Mr. Sherman for many years and all express shock and surprise upon learning of Mr. Sherman's crimes as it is conduct completely opposite his otherwise long history of law-abiding conduct.

14

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

## B. The History and Characteristics of the Defendant

In U.S. v. Gray, 453 F.3d 1323 (11th Cir 2006), the 11th Circuit held that a defendant's "age," "lack of criminal history," and "medical conditions "are all proper sentencing considerations as they relate to a defendant's "History and Characteristics."

**Personal and Family History**

Mr. Sherman was born and raised in Chicago, Illinois. His parents now deceased owned and operated a small musical instrument business in Chicago. Mr. Sherman has one brother, Kim Sherman, a retired lawyer.

Mr. Sherman attended and graduated college at the University of Wisconsin with an accounting degree in 1964.  Thereafter, he attended and graduated from Northeastern University Law School in 2 ½ years in 1967.

After graduating from Law School, Mr. Sherman enlisted in the Illinois Air National Guard in 1967. He completed his basic training and was attached to a fuel wing. He regularly drilled one weekend per month. He served his annual training in Germany and at Lackland Air Force Base in Texas. He earned a Good Conduct Medal and was Honorably discharged in 1973.

A defendant's military service, honorable discharge and remorse are all valid downward variance factors. See, U.S. v. Howe, 543 F.3d 12-138-40(3rd Cir 2008).

From 1967-1975, Mr. Sherman practiced law in Chicago, Illinois with another lawyer, and then from 1969-1975, he started his own firm, Boyd, Blanshan, and Sherman also in Chicago.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Mr. Sherman married Ellen Kamerman in October 1968 in Chicago[8]. Together they have two (2) sons, Drew, 52-years-old a lawyer married with children, and Seth, 50 years-old, a psychiatrist.

In 1975, Mr. Sherman moved to Florida with his wife and their two young sons. He passed the Florida Bar Exam and joined the law firm of Broad & Cassel in Bay Harbor Islands as a litigation partner. Mr. Sherman was also the Assistant Town Attorney and then the Town Attorney for Bay Harbor Islands. He later formed his own firm, Sherman and Fischman in Miami in 1984-1999. In 2000, Mr. Sherman formed Sherman Law Offices Chartered in Florida with his brother, Kim Sherman, and they hired Mr. Sherman's son, Drew Sherman. In 2010, Mr. Sherman and his son moved to Boca Raton and formed Sherman and Sherman P.A.

During his legal career in 1984, Mr. Sherman started representing Dan Marino and in 1992 he formed a 501(c)(3) charitable foundation to provide services to autistic children. All of his work was pro bono, and the Foundation has helped over 9,000 autistic children from its Ft. Lauderdale Campus. Mr. Sherman sat on the Board for many years and provided legal services at no charge.

Unfortunately, Mr. Sherman's successful legal career became a financial disaster when he learned in 2010 his wife of forty (40) years was dying of kidney failure and she was in desperate need of a kidney transplant. Mr. Sherman devoted the majority of his

---

[8]Mr. Sherman was briefly married for three (3) weeks prior to his marriage to Ellen. This marriage was never consummated, and it was annulled.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

time finding a suitable donor, and his law practice revenue declined.

It took until 2015 to find a suitable donor for his wife and almost until 2019 for her to acclimate to a lifetime of anti-rejection drugs. During this period, Mr. Sherman was primarily responsible for his law firm expenses while also supporting his family. Mr. Sherman gladly took on all of his family's financial needs, but it put a financial stress as well as emotional toll that Mr. Sherman succumbed to his criminal activity, which again he deeply regrets. (See Mr. Sherman's Letter of Acceptance Responsibility in PSI Pages 10-11)

Mr. Sherman voluntarily surrendered his Florida law license which the Florida Supreme Court accepted on March 19, 2020.

As a result of the charges and arrest in the instant case, Mr. Sherman has lost his right to practice law. He destroyed his reputation, and his wife of fifty-four (54) years divorced him and does not speak to him. (PSI Page 15) His two (2) sons likewise do not speak with him, and he is prohibited from seeing or speaking to his two (2) grandchildren.

A defendant's loss of his employment, reputation and family are all valid downward variance circumstances that courts have relied upon in granting variance sentence. See, U.S. v. Redemann, 295 F. Supp. 2d 887,894-97(E.D. Wisc. 2005) A brief synopsis of the character letters written on behalf of Mr. Sherman and attached hereto as Exhibits all attest to Mr. Sherman's long history of being an ethical and honest person/lawyer, and his crimes are completely contrary to otherwise long history of law-abiding conduct.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

**Mr. Kim Douglas Sherman (Ex. "B"):**

Mr. Kim Sherman is Mr. Sherman's younger brother. He writes upon learning of Craig's offenses he was shocked as he is not only Craig's brother and grew up with him, but they were law partners for ten (10) years. He never saw any inappropriate conduct by his brother.

Mr. Kim Sherman writes that what his brother did is wrong. He believes that the pressures of assisting his wife to find a kidney donor took his brother away from his law practice and his ability to make money while still being financially responsible to his family, his sons, and relatives with the result of his committing crimes.

Mr. Kim Sherman notes that Craig has now lost his wife after fifty-four (54) years of marriage, his sons have cut off all contact. In addition, Craig lost his reputation and ability to practice law. He asks this Court for mercy.

**Mr. Jay Dolgin (Ex. "C"):**

Mr. Dolgin is an attorney licensed in Illinois, Florida, and Texas. Mr. Dolgin went to college with Mr. Sherman at the University of Wisconsin-Madison.

Mr. Dolgin writes that Mr. Sherman was always a respectful, truthful, honest, knowledgeable lawyer. He knows Mr. Sherman is embarrassed by his wrongful conduct, is very remorseful, and truly regrets what he did to his clients and his family; Mr. Dolgin writes Mr. Sherman's actions are completely out of his lifelong law-abiding character.

**Ms. Jennifer Kane (Ex. "D"):**

Ms. Kane's family has been best friends with Mr. Sherman their entire lives. As a

18

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

result of their families' friendship, Ms. Kane considers Mr. Sherman her "Uncle Craig." Upon hearing of Mr. Sherman's charges, Ms. Kane writes she was "shocked, it's so out of character as Mr. Sherman is the straightest most conservative honest person I know."

### Mr. Ronald Jaman (Ex. "E"):

Mr. Jaman grew up with Mr. Sherman in Chicago. In high school and college according to Mr. Jaman, Mr. Sherman was a top student and always conducted himself "maturely and responsibly."

Mr. Jaman writes that Mr. Sherman possesses the characteristics of being smart, hardworking, conscientious, and honest.

Mr. Jaman writes no one was more shocked when he heard of Mr. Sherman's arrest and charges. Mr. Sherman has shared with Mr. Jaman his deep remorse and regret for his actions.

### Mr. Stanley Price (Ex. "F"):

Mr. Price is a practicing attorney for fifty-four (54) years. He has known Mr. Sherman since 1980's. During this time Mr. Price writes "Craig always demonstrated the highest ethics, respect for our court system and rule of law. I never witnessed any [misconduct] by Craig."

Mr. Price writes Mr. Sherman has shared his remorse and shame for his actions. Mr. Price notes that Mr. Sherman has several health issues and asks for the Court's mercy in sentencing Mr. Sherman.

19

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

### Mr. Charles Pearlman (Ex. "G"):

Mr. Pearlman is a retired finance lawyer having practiced from 1976 to his retirement in 2019.

Mr. Pearlman has known Mr. Sherman professionally and personally for over 20 years.

During this time, Mr. Pearlman writes "Mr. Sherman always exhibited positive traits of truthfulness, honesty, integrity, and respect for the law."

Mr. Pearlman writes that upon learning of Mr. Sherman's arrest and charges "I was truly shocked. This is not the person I had known for many years, and it is contrary to traits he always exhibited."

Mr. Pearlman writes "I know [Craig] is remorseful and ashamed for what he has done. These actions are "totally out of character for him."

### Mr. Thomas Brandeis/Joanne Gaines (Ex. "H"):

Ms. Gaines and Mr. Brandeis are bankers and have known and worked with Mr. Sherman for over thirty (30) years.

Both wrote "we were surprised to read in Miami Herald of the charges and the charges are completely contrary to our professional and personal relationships/knowledge of Mr. Sherman's character for over 30 years."

### Dr. Stuart Markowitz (Ex. "I"):

Dr. Markowitz is a doctor and professor who was involved with the establishment of FAU College of Medicine.

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

Dr. Markowitz met Mr. Sherman in 2010 as neighbors. They served together on their Condo Board and Dr. Markowitz observed firsthand Mr. Sherman's legal knowledge and capabilities.

Dr. Markowitz writes "I know that [Craig] is most remorseful for what happened as it is so out of character for him." "Craig Sherman has been a sincere, honest, and forthright person who has contributed positivity to people's welfare."

**Mr. Saul Wexler (Ex."J"):**

Mr. Wexler is a practicing attorney in Illinois and former Assistant Attorney General for the State of Illinois. He has known Mr. Sherman since they were both in high school.

Mr. Wexler writes he was "quite shocked" upon learning that Mr. Sherman did. He notes "I know firsthand the anguish and remorse that [Mr. Sherman] feels by reason of his conduct. I assure you that [his wrongdoing] is directly contrary to everything I have known about Craig over the past 60 years."

**Mr. Phillip Fidler (Ex. "K"):**

Mr. Fidler has known and been friends with Mr. Sherman for over sixty (60) years. They attended college together. Mr. Fidler later moved to Bay Harbor Islands and observed firsthand how Mr. Sherman's work as Town Attorney for Bay Harbor Islands. Mr. Fidler writes: "[Craig's knowledge, expertise, and professionalism were trusted by everyone, and he was a critical factor in the growth and success of the town during his term as Town Attorney.]"

21

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Mr. Fidler, like everyone who knows Mr. Sherman writes ["I was shocked to read about Craig's crimes, it is completely out of his character."] He notes that "remorse is the price Craig pays every day."

**Mr. Sherman's Serious Medical Issues:**

As discussed above and accurately detailed in the PSI Report, Mr. Sherman has substantial serious medical issues that requires he takes daily prescription medications, must be examined by his specialty doctors on a regular basis for treatment and monitoring of his medical conditions.

Both Mr. Sherman's age and his medical issues support a downward departure as argued above per U.S.S.G. Section 5H1.1 and 5H1.4. However, should this Court determine that Mr. Sherman's medical conditions do not qualify for a downward departure, said conditions do qualify for a downward "variance" sentence.

Variances "differ from departures." In U.S. v. Myers, 503 F.3d 676, 684(8th Cir 2007) the court noted:

"[guideline departures and post - Booker, variances are different. There may well be cases that would not justify a departure under the Guidelines, but which are appropriate for a variance."]"

Likewise, in U.S. v. Chase, 560 F.3d 828 (8th Cir 2009), the defendant sought a downward sentence variance based upon his age and health issues. The district court denied the defendant's request holding that the defendant's health issues were not "extraordinary" as required for a health downward departure per 5H1.4. In reversing and remanding the case the 8th Circuit noted that pursuant to U.S.C. Section 3553(a) a

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.: 23-80083-CR-ROSENBERG/REINHART

defendant's age and medical conditions can form the basis for a variance even though they would not justify a departure sentence.

Mr. Sherman maintains that his serious, significant medical issues and his advanced age support a downward departure as well as downward variance[9].

## 2. THE NEED FOR SENTENCE THE SENTENCE IMPOSED (§ 3553(a)(2))

The next § 3553(a) factor the Court must consider is "the need for the sentence imposed," including "need for sentence to reflect the seriousness of the offense;" "to promote respect for the law;" "to provide just punishment for the offense, to attend adequate deference to criminal conduct, to protect the public from further crimes of the defendant and to provide the defendant with needed education or vocational training, medical care in the most effective manner."

### SERIOUSNESS OF THE OFFENSE

Mr. Sherman understands and accepts responsibility that his offenses are serious. It is respectfully submitted that home confinement is by no means a lenient sentence, especially for someone like Mr. Sherman who is elderly with significant medical issues. See, Gall v. U.S., 552 U.S. 38,48 (2007) (holding that a non-incarceration sentence is indeed punishment)

---

[9]Mr. Sherman acknowledges courts in analyzing 5H1.4 health departure use a three (3) part test: (1) whether incarceration would impose more than the "normal hardship" on the defendant, (2) whether the defendant would face more than "the normal inconvenience of danger" from the incarceration, and (3) whether the defendant 's physical condition would have a "substantial present effect" on his functional ability while in prison. U.S. v. Krilich, 257 F.3d 689 (7th Cir 2001). As argued above, Mr. Sherman submits he satisfies this departure test.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Mr. Sherman is mindful of the 11th Circuit decisions discussing "White Collar" sentencing and need for sentences of imprisonment. See, U.S. v. Martin, 455 F.3d 1227 (11th Cir 2006); U.S. v. Irey, 612 F.3d 1160 (11th Cir. 2010) (en bank). U.S. v. Livesay, 484 F.3d 1324 (11th Cir 2007).

However, a district court "has considerable discretion in deciding which Section 3553(a) factors justify a variance and the extent of the variance that is appropriate." U.S. v. Shaw, 560 F.3d 1230,1238 (11th Cir 2009). The appellate courts give due deference to the district court's decision that the Section 3553(a) factors support its chosen sentence. U.S. v. Irey, supra at 1186-87.

Herein Mr. Sherman's age, his medical issues, and required continuous medical treatment all provide support for both downward departure and variance sentence.

**RESPECT FOR THE LAW**

In U.S v. Stern, 590 F. Supp. 2d 945, (N.D. Ohio 2008), the court noted that "[respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake.]" (Citation omitted). The court further noted "[t]here is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than reason to believe that respect for the law will increase if a defendant who deserves a harsh penalty receives a slap on the wrist." Id; at 956-957.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Likewise, in <u>U.S. v. Williams</u>, 435 F.3d 1350, 1352-1353 (11th Cir 2006), the Eleventh Circuit noted "[a sentence out of proportion to the conduct does not promote respect for the law but actually promotes disrespect for the law.]"

Mr. Sherman submits that a sentence of home confinement and probation satisfies all the above factors.

## DETERRENCE AND PROTECTION OF THE PUBLIC

In terms of deterrence, the analysis must include not just an explanation of how the sentence will deter the particular defendant to commit future offenses, (specific deterrence), but include an explanation of how the sentence will deter others from committing like crimes in the future, (general deterrence). <u>See</u>, <u>U.S. v. Shipley</u>, 561 F. Supp. 2d at 744-45; <u>U.S v. Beiermann</u>, 599 F. Supp 2d at 1112.

A sentence of probation with home confinement is a "significant punishment," <u>Gall v. U.S.</u>, <u>supra</u>, at 40.  A term of imprisonment for Mr. Sherman would be greater than necessary to satisfy the deterrence factor of §3553(a)(2)(B).

## "PROTECTING THE PUBLIC"

Mr. Sherman is not a danger to the community and thus he does not need to be incarcerated. He voluntarily surrendered his law license, and he will never be in a position of trust again.  His lack of prior record and age demonstrate he is not a danger to the public, nor is he likely to commit any new crimes.

Dr. Adam White, a Board-Certified Forensic Psychologist performed a Forensic Psychological Examination of Mr. Sherman. Dr. White's Report is attached hereto as

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Exhibit "L." As noted in his Report, Dr, White's professional opinion within a reasonable degree of psychological certainty is that Mr. Sherman is at a very low risk to re-offend.

Courts have found that a below Advisory Sentencing Guideline Sentence is appropriate for defendants with low potential for recidivism, particularly when confirmed by an expert opinion. See, U.S. v. Baird, 580 F. Supp. 2d at 894-895; U.S. v. Smith, 275 Fed. Appx. 184, 187-188 (4th Cir. 2008) (below guideline sentence appropriate in part because of defendant's low risk of recidivism).

## TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

As noted herein, Mr. Sherman for the vast majority of his eighty-one (81) years lived a law-abiding life. He does not abuse alcohol, or illegal drugs, and thus he has no substance abuse issues.

The PSI Report notes Mr. Sherman has "significant medical issues." (PSI Pages 15-18, 25-26)

Section 3553(a)(2)(d) provides that the court "shall" determine how a defendant's necessary medical care can be administered in "the most effective manner." Thus, in U.S. v. Edwards, 595 F.3d, 1011 (9th Cir 2010), the defendant was 63 years-old living with diabetes and other related medical conditions. The district court found that the BOP was "capable" of taking care of the defendant's medical care but determined that a sentence of probation would provide the needed medical care in "the most effective

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

manner," as Section 3553(a)(2)(b) requires. See also, U.S. v. Wadena, 470 F.3d 735, 739 (8th Cir 2006).

Mr. Sherman's serious medical issues can be most effectively addressed and treated by his own doctors and a sentence of probation and home confinement is the best sentencing option.

Attached hereto is the Report of Dr. Charles Howard, a retired twenty (20) year Medical Officer with Federal Bureau of Prisons. (BOP) (Ex. "M"). Dr. Howard will also appear and testify at Mr. Sherman's Sentencing hearing.

Briefly, as set forth in Dr. Howard's Report and to be more fully addressed by him in court, Mr. Sherman has serious medical issues that require several different "sub-specialty" medical doctors that BOP do not provide but will require "outside prison" appointments and care.

Dr. Howard wrote:

Upon a comprehensive exhaustive review of all Medical records available, Mr. Sherman has multiple complex Medical conditions best managed by the respective Specialists. The most practical, judicious, and economically effective Medical care for Mr. Sherman would be to allow him to continue his care with his existing Medical Providers by allowing him Home Confinement with Supervision.  He, and the Government coffers are best served by Home Confinement, in a supervised Program.

I state this because, while at Federal Medical Center Devens, and at the Federal Detention Center Miami over my Twenty Years (20) BOP experience I have observed the downward spiral in both an Inmate's physical and mental health many times.   It is overwhelming.  As medical, psychological, and physical conditions worsen, the course of deterioration leaves one little hope of functioning independently for the duration of their incarceration.

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Please consider the severity of the Medical Conditions, and the likelihood Mr. Sherman will have significant life-threatening complications if he is not allowed to serve his sentence in Home Confinement with supervision. He needs properly monitored appropriate Medical Specialty care.  His advanced age and negligible likelihood of recidivism are additional factors to consider. (Ex. "M")

As noted above Section 3553(a)(2)(b) provides that the court shall consider "the most effective" means of addressing an elderly defendant's medical issues.

While the BOP might be able to provide some level of care and treatment for Mr. Sherman's serious medical issues, a sentence of probation and home confinement will provide and allow for the "most effective" treatment in accordance with Section 3553(a)(2)(b) mandate. See, U.S. v. Autery, 555 F.3d 864, 876-877 (9th Cir 2007) wherein a sentence of probation was given as the defendant would receive the "most effective" treatment out of prison.

The Court is also reminded of U.S.S.G. Section 5H1.1 and 5H1.4 language that a court should depart downward where "a defendant is elderly and infirm and where a form of punishment such as home confinement might be equally as and less costly than incarceration."

## 3. KINDS OF SENTENCE AVAILABLE (§3553(a)(3))

The PSI Report notes probation with home confinement is a possible statutory sentence. (PSI Page 24)

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

## 4.  KINDS OF SENTENCES FOR THE DEFENDANT RANGE AND SENTENCING GUIDELINE

Where the Advisory Guidelines do not authorize a probation/home confinement sentence U.S.S.G. Section 5B1.1, Comment (page 2) per Section 3553(a) probation/home confinement sentence may be given.

## 5. SENTENCING COMMISSION POLICY STATEMENT

## 6.  NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AND UNWARRANTED SIMILARITIES

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. §35533(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the Guideline Range. See, Gall v. U.S., 552 U.S. 38, 55 (2007) ("need to avoid unwarranted similarities among other co-conspirators who were not similarly situated").

U.S.S.G. §2B1.1 is used to determine sentences for Wire Fraud. The most significant §2B1.1 characteristic that incrementally raises a defendant's offense level based on the amount of the loss associated with an offense.

Courts have recognized that loss amounts result in too severe sentences as noted in U.S v. Gupta, 904 F. Supp 2d 349,351 (S.D.N.Y. 2012):

> By making a Guideline Sentence on this single factor (loss) the Sentencing
> Commission ignored §3553(a).....

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

"While the fraud guideline focuses primarily on aggregate monetary loss and victimization, it fails to measure a host of other factors that may be important, and may be a basis for mitigating punishment, in a particular case." Allan Ellis, John R. Steer, Mark Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 Crim. Just. 34, 37(2011).

As noted above, Courts have granted downward departure/ variance sentences of probation/home confinement for defendants like Mr. Sherman who are both elderly and infirm. See, <u>U.S. v. Baron</u>, 914 F. Supp. 660 (D. MASS. 1995), a downward departure for Advisory Range of 27-33 month for 76 year-old defendant charged with  bankruptcy fraud where his medical problems would get worse in prison.

Applying all of the 18 U.S.C. § 3553(a) factors, Mr. Sherman's requested sentence of probation with home confinement does not violate §3553(a)(6).

According to the US Sentencing Commission Quarterly Data Report Fiscal Year 2022 in fraud, theft offenses, judges out of a total of 5,520 reported cases imposed probation in 1,285 cases, probation with alternatives in 302 cases, and probation only in 568 cases. See, U.S. Sentencing Commission's 2022 Quarterly Data Report (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2022_Quarterly_Report_Final.pdf), Table 7. (Ex. "N")

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

## 7. RESTITUTION

A defendant convicted of fraud must pay restitution to victims of the offense. U.S v. Bane, 720 F.3d 818, 827 (11th Cir 2013).

In determining the appropriate sentence, this Court must consider "the need to provide restitution to any victims of the offense." See, 18 U.S.C §3553(a)(7); See also, e.g., U.S. v. Menyweather, 447 F.3d 625, 634 (9th Cir 2006) (acknowledging district court's discretion to depart from guidelines to impose probationary sentence, since the "goal of obtaining restitution for the victims of defendant's offense ... is better served by a non-incarcerated and employed defendant"); U.S. v. Peterson, 363 F. Supp. 2d 1060, 1061-62 (E.D. Wis. 2005) (granting a variance so that defendant could work and pay restitution).

Mr. Sherman wants to make restitution. While at this stage of Mr. Sherman's life, including his age, health problems, and loss of law license, his employment opportunities are limited but he will do his best to make restitution to the victims.

## ADDITIONAL GROUNDS IN SUPPORT OF MR. SHERMAN'S REQUEST FOR VARIANCE

Courts have held that certain "collateral consequences" as a result of a defendant's criminal conduct can be considered as §3553(a) factors in granting a variance from the Advisory Federal Sentencing Guidelines:

**Loss of professional reputation and loss of family and friends.**

As a result of his criminal conduct, Mr. Sherman voluntarily surrendered his Florida

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

Law License. The Florida Supreme Court accepted his voluntary surrender of his license, and he is now permanently disbarred. As a result, Mr. Sherman has lost his ability to practice law, something he enjoyed doing for forty-five (45) years without any prior disciplinary or malpractice claims.  (PSI Report Page 19).

Likewise, as a result of his misconduct, his wife of 54 years divorced him. His two (2) sons refuse to speak with him, he is prohibited from any contact with his two (2) grandchildren, and many of his "friends" likewise have ended all friendships.

At 81 years of age, Mr. Sherman finds himself living alone in a one (1) bedroom apartment. He has lost everything important to him, his occupation, his reputation, and his family.

Courts have found that under §3553(a) analysis downward variance sentences are properly given for defendants who as a result of their criminal activity lost their jobs, and their personal and professional reputations. U.S v. Anderson, 533 F.3d 128 (3rd Cir 2008). In U.S. v. Stone, 374 F. Supp. 2d 983 (D.N.M. 2005), the defendant received a downward sentence as he lost his job, and his wife divorced him.

## VOLUNTARY DISCLOSURE AND COOPERATION WITH VICTIM SMITH'S CIVIL CASE

In October 2019, Mr. Smith contacted Mr. Sherman and Mr. Sherman ultimately confessed his wrongdoings. Thereafter, Mr. Sherman gave a sworn deposition on August 18, 2020, to Mr. Smith and his attorney where he answered all questions about the monies he obtained from Mr. Smith. He further provided bank records, trust account bank

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

records where Mr. Sherman detailed receipt of Smith's monies and how the monies were spent.

Mr. Sherman also agreed and executed a civil judgement in favor of Mr. Smith for all monies owed. Mr. Sherman also paid Mr. Smith $150,000.00 from proceeds of his share of his Homestead property and convinced his son to also give back to Mr. Smith $186,000.00 Mr. Sherman had given him to purchase a home.

Courts have granted downward departures/variances when a defendant voluntarily disclosed or self-reported his criminal actions. See, e.g., U.S. v. Miller, 991 F.2d 552 (9th Cir 1993) (voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure); U.S. v. Brown, 985 F.2d 478, 482–83 (9th Cir 1993) (holding that court could depart downward under §5K2.0 based on defendant's confession if district court determined that the two-point reduction for acceptance of responsibility did not adequately reflect defendant's extraordinary acceptance of responsibility).

## CONCLUSION:

Mr. Sherman appreciates and understands that his crimes are serious. Mr. Sherman's request for a sentence of probation with home confinement along with the recommendations made by The Aleph Institute of community service, "deterrence talks," and "spiritual counseling" will all satisfy the requirements of a sentence that is fair and is not greater than necessary to satisfy all requirements of sentencing.

LAW OFFICES OF ROTH & DUNCAN, P.A.

SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818

CASE NO.:  23-80083-CR-ROSENBERG/REINHART

**WHEREFORE**, for all of the reasons set forth herein and to be presented at the sentencing hearing this Court is respectfully requested to sentence 81-year-old Mr. Sherman with serious medical issues to a term of probation with home confinement with all necessary conditions deemed necessary.

Respectfully submitted,

ROTH & DUNCAN, P.A.
Northbridge Centre, Suite 325
515 North Flagler Drive
P.O. Box 770
West Palm Beach, Florida 33402
Tele: (561)-655-5529
Email: dougduncan325@gmail.com

_____
DOUGLAS DUNCAN
Fla. Bar #309672

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on or before October 31, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM.ECF to: Laurence Bardfeld, AUSA, 500 East Broward Blvd., Suite 700, Fort Lauderdale, Florida 33394-3002.



_____
DOUGLAS DUNCAN
Fla. Bar #309672

LAW OFFICES OF ROTH & DUNCAN, P.A.
SUITE 325 • NORTHBRIDGE CENTRE • 515 NORTH FLAGLER DRIVE • WEST PALM BEACH, FLORIDA 33401 • TEL. (561) 655-5529 • FAX (561) 655-7818